UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re CPI CARD GROUP INC. SECURITIES LITIGATION | No. 16-cv-4531 (LAK) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
RENEWED UNOPPOSED MOTION FOR AUTHORIZATION TO NOTIFY
SETTLEMENT CLASS OF PROPOSED SETTLEMENT AND OR
<u>TO SCHEDULE A SETTLEMENT HEARING</u>**

## TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ...................................................................................2

II.     BACKGROUND ........................................................................................................3

III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE PROVISIONALLY
        CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a) AND
        23(b)(3) ......................................................................................................................7

        A.      The Members of the Settlement Class Are Too Numerous to Be Joined ...............8

        B.      Common Questions of Law and Fact Exist ......................................................9

        C.      Lead Plaintiff's Claims Are Typical of Those of the Settlement Class ................10

        D.      Lead Plaintiff and Lead Counsel Will Fairly and Adequately Protect the
                Interests of the Settlement Class ..................................................................11

        E.      The Requirements of Rule 23(b)(3) Are Satisfied ...........................................12

                1.      Common Questions of Law and Fact Predominate ..................................12

                2.      A Class Action Is Superior to Other Available Methods for the Fair
                        and Efficient Adjudication of this Controversy ........................................14

IV.     THE PROPOSED NOTICE PROGRAM WOULD PROVIDE THE BEST
        NOTICE PRACTICABLE AND SHOULD BE APPROVED .........................................14

V.      PROPOSED SCHEDULE OF SETTLEMENT RELATED EVENTS............................18

CONCLUSION...................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x. 41 (2d Cir. 2008) ...........................................................................................17

*In re Am. Int'l Grp. Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012).................................................................................................7

*Aramburu v. Healthcare Fin. Servs.*,
  No. 02-cv-6535, 2005 WL 990995 (E.D.N.Y. Apr. 14, 2005)............................................7

*In re Barclays Bank PLC Sec. Litig.*,
  No. 09-cv-1989, 2016 WL 3235290 (S.D.N.Y. June 9, 2016) .............................................13

*Cross v. 21st Century Holding Co.*,
  No. 00-cv-4333, 2004 WL 307306 (S.D.N.Y. Feb. 18, 2004) ............................................8

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)................................................................................................11

*In re Dynex Capital Inc. Sec. Litig.*,
  No. 05-cv-1897, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011)................................................11

*Lomeli v. Sec. & Inv. Co. Bahrain*,
  546 F. App'x. 37 (2d Cir. 2013) .........................................................................................16

*McMahan & Co., Wherehouse Entm't Inc.*
  65 F.3d 1044, 1048 (2d Cir. 1995)......................................................................................13

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010)...........................................................................................13

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ..........................................................................................9

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)..............................................................................................13

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)................................................................................................13

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08-cv-5633, 2011 WL 3874821 (S.D.N.Y. Aug. 16, 2011)..........................................9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................7

*Pub. Emps'. Ret. Sys. of Miss.v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ....................................................................11, 13

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) .................................................................................10

*In re SCOR Holding (Switzerland) AG Litig.*,
  537 F. Supp. 2d 556 (S.D.N.Y. 2008) ..................................................................8, 9

*In re Stock Exchs. Options Trading Antitrust Litig.*,
  No. 99-cv-0962, 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ..............................15

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ..........................................................................10

*In re Vivendi Univ., S.A., Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ..............................................................................8

*Wal Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ....................................................................................17

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ..........................................................10, 11, 14

**Statutes**

15 U.S.C. §77k(e) ...........................................................................................................13

15 U.S.C. §78u-4(a)(7)(A)-(F)........................................................................................16

**Rules**

Fed. R. Civ. P. 23 .................................................................................................*passim*

Fed. R. Civ. P. 23(a) ...................................................................................................7, 12

Fed. R. Civ. P.  23(a)(1) ..............................................................................................8, 9

Fed. R. Civ. P. 23(a)(2)....................................................................................................9

Fed. R. Civ. P.  23(a)(3) .................................................................................................10

Fed. R. Civ. P.  23(a)(4)..............................................................................................7, 11

Fed. R. Civ. P.  23(b) ...................................................................................................12

Fed. R. Civ. P.  23(b)(3) ........................................................................................7, 12, 14

Fed. R. Civ. P. 23(g) ...................................................................................................11

Fed. R. Civ. P. 23(g)(1)(A) .........................................................................................12

Fed. R. Civ. P. 23(g)(1)(B) .........................................................................................12

Court-appointed Lead Plaintiff, Alex Stewart ("Lead Plaintiff"), through court-approved counsel Jonathan Gardner of Labaton Sucharow LLP ("Lead Counsel"), renews its motion pursuant to Federal Rule of Civil Procedure 23(e) for authorization to notify the proposed Settlement Class of the proposed Settlement with CPI Card Group Inc. ("CPI" or the Company"), Steven Montross, David Brush, Jerry Dreiling, Bradley Seaman, Nicholas Peters, Robert Pearce, and David Rowntree (collectively, the "Individual Defendants"), Tricor Pacific Capital Partners (Fund IV), Limited Partnership, Tricor Pacific Capital Partners (Fund IV) US, Limited Partnership, and Tricor Pacific Capital, Inc. (collectively, the "Tricor Fund Defendants"), as well as BMO Capital Markets Corp, Goldman Sachs & Co. LLC (f/k/a Goldman, Sachs & Co.), CIBC World Markets Inc., Robert W. Baird & Co. Incorporated, William Blair & Company, L.L.C., Raymond James & Associates, Inc., Scotia Capital (USA) Inc., and Griffins McBurney Corp. (collectively, the "Underwriters Defendants" and, together with CPI, the Individual Defendants, and the Tricor Fund Defendants, the "Defendants").[1]

Pursuant to the Court's Memo Endorsement entered October 1, 2018 (ECF No. 155), the proposed long-form settlement notice has been revised to disclose both Lead Plaintiff's and Defendants' positions on damages, assuming Lead Plaintiff were to prevail on liability.  Exhibit 4 to the Gardner Declaration, submitted herewith, is a redline of the revised notice showing the changes.

---

[1]   All capitalized terms that are not otherwise defined herein have the meanings provided in the Stipulation and Agreement of Settlement, dated as of September 21, 2018 (the "Stipulation"), which is being filed concurrently herewith as Exhibit 1 to the Declaration of Jonathan Gardner in Support of Unopposed Motion for Authorization to Notify Class of Proposed Settlement and to Schedule Settlement Hearing (the "Gardner Declaration").  All references to "Ex. __" herein are references to exhibits attached to the Gardner Declaration.

## I.      PRELIMINARY STATEMENT

Subject to Court approval, Lead Plaintiff has agreed to settle the claims asserted in the Action against Defendants in exchange for a cash payment of $11,000,000.00.  The Settlement will bring to a close litigation, lasting approximately two years, which included a thorough investigation conducted by Lead Counsel prior to filing the operative complaint involving interviews with more than 16 former CPI employees and the review of publicly available information concerning the Company and Defendants; motion practice concerning Defendants' motion to dismiss the Complaint and Lead Plaintiff's motion for class certification; robust arm's-length negotiations between counsel facilitated by a well-respected and experienced mediator; and the review of more than 2,000 core documents produced in connection with the mediation and confirmatory discovery.

Lead Plaintiff respectfully seeks approval of a settlement notice program and requests that the Court enter the proposed Order Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement (the "Notice Order").  The Notice Order will, among other things: (i) provisionally certify the Settlement Class for purposes of the Settlement; (ii) approve the form and manner of providing notice of the proposed Settlement to the Settlement Class; (iii) schedule a Settlement Hearing to consider (a) the terms of the Settlement as set forth in the Stipulation; (b) the proposed Plan of Allocation for the proceeds of the Settlement; and (c) Lead Counsel's application for an award of attorneys' fees and expenses; (iv) appoint the Claims Administrator recommended by Lead Counsel to administer the Settlement; (v) establish procedures and a deadline for persons to object to the terms of the Settlement, Plan of Allocation, and/or the requested attorneys' fees and expenses; (vi) establish procedures and a deadline for persons to request exclusion from the Settlement Class; and (vii) establish

procedures and a deadline for submitting Claim Forms for payments from the Net Settlement Fund.  The proposed Notice Order contains the revised long-form notice.

## II.    BACKGROUND

On June 15, 2016, an initial securities class action complaint was filed in this Court asserting claims under Sections 11 and 12 of the Securities Act of 1933 (the "Securities Act") for alleged misstatements and omissions in connection with the registration statement and prospectus (collectively, the "Offering Materials") issued in connection with CPI's October 9, 2015 initial public offering ("IPO").  ECF No. 1.  Defendant CPI is a provider of comprehensive financial payment card solutions; in other words, CPI produces and sells credit, debit, and prepaid debit cards.  Complaint at ¶¶43-51, 64.

On August 30, 2016, the Court entered an Order appointing Alex Stewart as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), appointing counsel, and consolidating the related actions, and all subsequently filed actions, into this Action. ECF No. 88.

On October 17, 2016, Lead Plaintiff filed the Consolidated Class Action Complaint for Violation of Federal Securities Laws (the "Complaint"), asserting claims under Sections 11 and 15 of the Securities Act.  ECF No. 109.  In general, the Complaint alleges that the Offering Materials used to conduct the Company's IPO misrepresented the true state of demand for "chip" payment cards and failed to disclose material adverse trends and uncertainties, as well as significant risks, that allegedly existed and were known as of the date of the IPO.  On behalf of the Settlement Class, Lead Counsel conducted an investigation to support the allegations in the Complaint.   That investigation including, among other things, a review and analysis of (a) regulatory filings made by CPI with the United States Securities and Exchange Commission; (b) public reports and news articles; (c) research reports by securities and financial analysts;

(d) press releases, transcripts of earnings calls, and other public statements issued by and disseminated by the Company; (e) interviews with 16 former CPI employees and other persons knowledgeable about CPI's business and industry identified by Lead Counsel's investigators; and (f) other publicly available material and data.

As alleged in the Complaint, as a "leading provider," the Company was represented to be "well-positioned to capitalize on" the introduction of a new generation of financial payment cards called "EMV" cards, or "chip cards," that were in the process of replacing the existing predecessor, *i.e.*, "magnetic stripe" cards. *Id.* at ¶¶43, 52-64, 66, 96-98.

After making a significant investment in EMV technology, CPI and its controlling stockholders, the Tricor Fund Defendants, allegedly sought to capitalize on the attention that this change in technology was receiving, as well as increased EMV card sales due to this change, by launching the IPO. *Id.* at ¶¶64-65, 76, 97, 107. As alleged in the Complaint, the Offering Materials published in connection with the IPO not only claimed that CPI was well-positioned to capitalize on the EMV conversion, but that CPI was experiencing astounding growth in sales and revenue of EMV cards. *Id.* at ¶¶66-75, 97-98.

According to the Complaint, the IPO was successful for the Defendants, who sold 17.25 million shares of CPI common stock for $10 per share, however investors did not fare so well because it was later allegedly revealed that the Offering Materials were negligently prepared, were materially inaccurate and misleading, and failed to disclose material adverse trends and uncertainties known to Defendants at the time of the IPO. As alleged in the Complaint, Defendants failed to disclose that, at the time of the IPO, CPI's largest customers for EMV cards were overstocked because, during the first half of 2015, they purchased significantly more cards than they were issuing. *Id.* at ¶¶81, 106, 113, 115-16. The Complaint also alleges that the

Offering Materials failed to disclose that, at the time of the IPO, small and midsize card issuers were not rapidly adopting EMV card technology, thus decreasing market demand. *Id*. at ¶¶88-89, 99, 106-07, 114, 117-18. Finally, the Complaint alleges that the Offering Materials failed to disclose that, at the time of its IPO, CPI was facing increased pricing pressure and competition in connection with obtaining EMV card orders. *Id*. at ¶¶89, 99, 105-106, 108, 118.

Once the market allegedly learned of the material adverse trends and uncertainties, the price of CPI's common stock collapsed. As of the filing of the initial complaint, CPI common stock traded at $4.70 per share—53% less than the $10 per share IPO price. *Id*. at ¶110.

On November 16, 2016, CPI, the Individual Defendants, and the Tricor Defendants (the "Issuer Defendants") moved to dismiss the Complaint, and the Underwriter Defendants filed a joinder. *See* ECF Nos. 110-113. Lead Plaintiff filed his opposition on December 16, 2016, *see* ECF No. 118, which was fully briefed upon the filing of the Issuer Defendants' reply brief and the Underwriter Defendants joinder, on January 10, 2017, *see* ECF Nos. 119-120. On October 30, 2017, the Court denied Defendants' motion to dismiss in its entirety. *See* ECF No. 124.

Following the Court's ruling on Defendants' motion to dismiss, on January 12, 2018, the Issuer Defendants and the Underwriter Defendants answered the Complaint. ECF Nos. 129-30. Thereafter, the Parties exchanged initial disclosures and Lead Plaintiff served document requests and interrogatories on the Defendants. Beginning on May 2, 2018, Lead Plaintiff also served 28 third-party subpoenas for the production of documents and/or deposition testimony. In connection with this discovery, Lead Counsel conducted numerous meet and confers to come to agreement on the scope of production, search terms, and custodians, among other things, with counsel for the Defendants and third-parties. On June 4, 2018, Lead Plaintiff also noticed a 30(b)(6) deposition on Defendant CPI. Before the Settlement was reached, third-parties

produced, and Lead Counsel reviewed, 409 documents as well as additional information provided in the course of written discovery responses and meet and confer sessions.

On April 23, 2018, Lead Plaintiff filed a motion for class certification.  ECF Nos. 137-139.  In connection with that motion, Defendants took a deposition of Lead Plaintiff on May 22, 2018.  On June 11, 2018, Defendants filed their opposition to Lead Plaintiff's motion for class certification.  ECF Nos. 143-144.  While that motion was pending, the Parties agreed to settle this Action.

In March 2018, the Parties engaged Mediator Michelle Yoshida, an experienced neutral with considerable knowledge and expertise in the field of securities class actions, to assist them in exploring the potential for a negotiated resolution.  Following an exchange of mediation statements and exhibits, as well as a document production of 3,000 pages of core material related to the IPO by Defendant CPI, Lead Plaintiff and the Issuer Defendants met with Mediator Yoshida on May 4, 2018 in an attempt to reach a settlement.  The full-day mediation session did not result in an agreement to settle the Action.

Over the course of the next several months, Lead Plaintiff and the Issuer Defendants continued to litigate and engage in arm's length negotiations.  On June 14, 2018, after numerous further communications on issues of liability and damages, Mediator Yoshida made a mediator's proposal to settle the Action for $11 million.  On June 18, 2018, the Parties accepted the mediator's proposal, subject to Lead Plaintiff being able to obtain additional documents and an interview with a member of CPI's Board of Directors.  On July 30, 2018, the Parties  executed a Settlement Term Sheet, subject to completing confirmatory discovery.  On July 31, 2018, the Parties notified the Court of their settlement in principle.

Lead Plaintiff's agreement in principle to the settle the Action was subject to its ability to

conduct further discovery, including receiving additional documents and conducting an interview of a member of CPI's Board of Directors.  The additional discovery that followed included (1) the production by Defendants, and analysis by Lead Counsel, of 2,607 documents (numbering more than 12,400 pages), and (2) the interview of Defendant Nicolas Peters.  On September 14, 2018, after review and consideration of all of this discovery, Lead Counsel informed counsel for the Defendants that Lead Plaintiff would proceed with the Settlement, given that the confirmatory discovery process reinforced and confirmed Lead Plaintiff's belief that the Settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class.

## III.   THE PROPOSED SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a) AND 23(b)(3)

It is respectfully submitted that the Court should provisionally certify the Settlement Class under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  Certification of settlement classes "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995).  "The law in the Second Circuit favors the liberal construction of Rule 23 . . . and courts may exercise broad discretion when they determine whether to certify a class."(citation omitted). *Aramburu v. Healthcare Fin. Servs.*, No. 02-cv-6535, 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005). Indeed, the Second Circuit has acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See In re Am. Int'l Grp. Inc. Sec. Litig.*, 689 F.3d 229, 238-39, 243 (2d Cir. 2012).

Lead Plaintiff seeks provisional certification of the Settlement Class, consisting of all Persons who purchased or acquired CPI common stock pursuant to or traceable to the

registration statement issued in connection with the IPO, and who were damaged thereby, except excluding: (i) Defendants and the Individual Defendants' immediate family members; (ii) the officers, directors, affiliates, and subsidiaries of CPI and/or the Tricor Fund Defendants, at all relevant times, including CPI's employee retirement and/or benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (iii) the past and current officers and directors of the Underwriter Defendants; (iv) any entity in which Defendants have a majority ownership interest; (v) persons who have no compensable damages; and (vi) the legal representatives, heirs, successors, or assigns of any such excluded person or entity.   Also excluded from the Settlement Class will be any Person that timely and validly seeks exclusion from the Settlement Class. *See* Stipulation ¶1(hh).

### A.   The Members of the Settlement Class Are Too Numerous to Be Joined

As required for class certification by Rule 23(a)(1), the members of the proposed Class are so numerous that joinder of all of their members would be "impracticable."   Impracticable does not mean impossible, and "[p]laintiffs are not obligated to prove the exact class size to satisfy numerosity."  *Cross v. 21st Century Holding Co.*, No. 00-cv-4333, 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18, 2004) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Lead Plaintiff may satisfy the numerosity requirement by "showing that a large number of shares were outstanding and traded during the relevant period."   *In re Vivendi Universal, S.A., Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (citation and internal quotation marks omitted). Indeed, numerosity has been presumed at a level as low as 40 class members.  *See In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 570 (S.D.N.Y. 2008) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

CPI sold 17.25 million shares of common stock in the IPO.  *See* ECF No. 138 at 8-10; *see also*  Complaint at ¶1, 79.  Based on this information, the Court can reasonably conclude that the

Settlement Class likely includes thousands of members, and joinder of all of these individuals would be impracticable.  Therefore, Rule 23(a)(1) is satisfied.

### B.     Common Questions of Law and Fact Exist

As Rule 23(a)(2) requires, the claims of the members of the proposed Settlement Class involve numerous common questions of law and fact.  To establish commonality, members of the class must have "suffered the same injury," and "[t]heir claims must depend upon a common contention."  *Wal Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation and internal quotation marks omitted).  Class members' "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  *Id*. at 2551.  The existence of just a single common legal or factual question is sufficient to satisfy Rule 23(a)(2).  *Id*. at 2556.

Here, the Complaint alleges a litany of questions of fact and law common to all members of the proposed Settlement Class including, *inter alia*: (i) whether the Offering Materials contain any misrepresentations on omissions; (ii) whether those misrepresentations or omissions are material; (iii) whether Defendants can establish a classwide defense of negative causation; (iv) whether the Underwriter Defendants performed adequate due diligence prior to the IPO; and (v) whether the Individual Defendants and Tricor Fund Defendants are control persons of CPI. *See* ECF No. 138 at 10-12.

Courts in this District have routinely found that the above types of common questions satisfy Rule 23(a)(2).  *See In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc*., No. 08-cv-5633, 2011 WL 3874821, at *2 (S.D.N.Y. Aug. 16, 2011).  The commonality requirement is thus met.

## C.     Lead Plaintiff's Claims Are Typical of Those of the Settlement Class

As Rule 23(a)(3) requires, "the claims . . . of the representative parties are typical of the claims . . . of the class."  Here, the Lead Plaintiff satisfies Rule 23(a)(3)'s typicality requirement because his claims are the same as those held by other class members, indeed "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *See SCOR Holding*, 537 F. Supp. 2d at 571 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007)); *see also* ECF No. 138 at 12-14.  "Typicality [ ] does not require that the situations of the named representatives and the class members be identical."  *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (alteration in original) (citation and internal quotation marks omitted).  Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (alteration in original) (citation and internal quotation marks omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims," *Robidoux*, 987 F.2d at 937 (citation omitted).

Here, Lead Plaintiff's claims are typical of the claims of absent members of the proposed Settlement Class because they all arise from "the same [set] of events." *See* ECF No. 138 at 12-14.  Lead Plaintiff alleges that Defendants violated the Securities Act by issuing Offering Materials that misrepresented and omitted material facts and that Lead Plaintiff and the Settlement Class acquired CPI common stock pursuant and/or traceable to those Offering

Materials. Those claims are based upon the same facts and legal theories, and would be proven by the same evidence. Typicality has been established in similar securities cases.[2]

### D. Lead Plaintiff and Lead Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Rules 23(a)(4) and 23(g) are satisfied here because, as they require, (i) Lead Plaintiff's interests are not antagonistic to those of other members of the Settlement Class, and (ii) Lead Counsel is qualified, experienced, and more than able to conduct this Action. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Based upon his purchase of CPI common stock, Lead Plaintiff's interests are directly aligned with the interests of the Settlement Class: all were injured by the same materially untrue statements or omissions in the Offering Materials. Therefore, Lead Plaintiff's interests in demonstrating the Defendants' liability and maximizing possible recovery are aligned with the interests of the absent class members. *See* ECF No. 138 at 14-16; *see also WorldCom*, 219 F.R.D. at 282 (finding that "named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments"). Further, there is no evidence that Lead Plaintiff has interests antagonistic to the interests of other members of the Settlement Class, and he has none.

As for the adequacy of Lead Counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel

---

[2]   *Pub. Emps'. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 109 (S.D.N.Y. 2011); *In re Dynex Capital Inc. Sec. Litig.*, No. 05-cv-1897, 2011 WL 781215, at *3 (S.D.N.Y. Mar. 7, 2011).

will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, Court-appointed Lead Counsel, Jonathan Gardner of Labaton Sucharow, is amply qualified and experienced and has conducted the Action vigorously and effectively on behalf of Lead Plaintiff and the Settlement Class. *See* Ex. 2. Labaton Sucharow LLP is among the leading law firms representing plaintiffs in securities class actions in courts throughout the nation. It has served as lead or co-lead counsel in a number of high profile matters, for example: *In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund and reaching settlements of $1 billion); *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) (representing the New York State and New York City Pension Funds and reaching settlements of more than $600 million); and *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-cv-397 (D.N.J.) (representing Massachusetts PRIT and reaching a settlement of $473 million—at the time the largest securities fraud settlement with a pharmaceutical company). *Id.*

### E.   The Requirements of Rule 23(b)(3) Are Satisfied

In addition to the four requirements of Rule 23(a), certifiable classes must also satisfy one of the three subparts of Rule 23(b). Lead Plaintiff seeks class certification under Rule 23(b)(3), which establishes two requirements, commonly referred to as "predominance" and "superiority," both of which are satisfied here. *See generally*, ECF No. 138 at 16-23.

### 1.   Common Questions of Law and Fact Predominate

Under Rule 23(b)(3), questions of law or fact common to the members of a class must "predominate" over any questions affecting individual members. The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that

qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

As courts in this District have explained, while individual issues arise "in all class action cases, . . . to allow various secondary issues to plaintiffs' claim(s) to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *Merrill Lynch*, 277 F.R.D. at 111 (citation omitted).

There are a number of questions common to members of the Settlement Class. *See* ECF No. 138 at 17-21. *First*, whether the Offering Materials contain untrue statements or material omissions is a common legal and factual question at the core of this litigation. Since Lead Plaintiff's claims focus on the contents of the Offering Materials—and do not require any showing of reliance, scienter, or loss causation—they are particularly well suited for class treatment. *See In re Morgan Stanley Info. Fund Sec. Litig.,* 592 F.3d 347, 358-359 (2d Cir. 2010). *Second*, whether certain Defendants were control persons is a common question affecting the claims asserted on behalf of the entire Class, thus, this issue will also predominate. *See Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 94 (D. Conn. 2010). *Third*, whether Defendants' statements and omissions were material is a question that will predominate because materiality is looked at objectively and, therefore, is subject to generalized proof. *See In re Barclays Bank PLC Sec. Litig.,* No. 09-cv-1989, 2016 WL 3235290, at *7 (S.D.N.Y. June 9, 2016). *Finally*, the methodology for calculating damages is common to the Class, because the Securities Act provides a standard damages formula. *See* 15 U.S.C. §77k(e); *McMahan & Co., Wherehouse Entm't Inc.,* 65 F.3d 1044, 1048 (2d Cir. 1995).

### 2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior: (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) whether it is desirable to concentrate litigation of claims in this forum; and (d) the manageability of a class action.  These factors favor certification here.

Given the size and likely geographical dispersion of the proposed Settlement Class and the likelihood that many purchasers will have sustained comparatively small losses, the circumstances here are precisely those for which a class action is appropriate.  It also is desirable to consolidate the litigation of claims here because common legal and factual issues predominate, and the alternative—the individual adjudication of the claims of members of the Class—would be extremely burdensome and risk inconsistency.  *See* ECF No. 138 at 21-23; *WorldCom*, 219 F.R.D. at 304 (noting that individual suits would risk "disparate results, [and] threaten to increase the costs of litigation for all parties exponentially").  In addition, Lead Plaintiff is not aware of any related federal securities litigation by CPI stockholders in any other forum.

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court provisionally certify the Settlement Class for purposes of implementing the proposed Settlement.

## IV.    THE PROPOSED NOTICE PROGRAM WOULD PROVIDE THE BEST NOTICE PRACTICABLE AND SHOULD BE APPROVED

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Similarly, with respect to the Settlement, Rule 23(e)(1) requires a

court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The proposed notice plan here readily meets these standards, and is typical of notice plans in similar securities class actions.

Lead Plaintiff respectfully requests that the Court approve the form of the proposed Notice and Summary Notice of the Settlement, attached as Exhibits 1 and 3 to the Notice Order, as well as the methods for providing notice to the Settlement Class. The content of a notice is generally found to be reasonable if "the average class member [would] understand[] the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99-cv-0962, 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006).

The proposed "long form" Notice apprises Settlement Class Members of (among other disclosures) the nature of the Action, the definition of the Settlement Class, the claims and issues in the Action, and the claims that will be released. The Notice also: (i) advises that a Settlement Class Member may enter an appearance through counsel if desired; (ii) describes the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3); (iii) states the procedures and deadline for objecting to the proposed Settlement, the proposed Plan of Allocation, or the requested attorneys' fees and expenses; (iv) states the procedures and deadline for Settlement Class Members to seek exclusion from the Settlement Class; (v) states the procedures and deadline for submitting a Proof of Claim to recover from the Settlement; and (vi) provides the date, time and location of the Settlement Hearing.

The Notice satisfies the separate disclosure requirements of the PSLRA by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable in

the event Lead Plaintiff prevailed, and stating the issue(s) on which the Parties disagree; (iii) the maximum amount of attorneys' fees and litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; (iv) the names, telephone numbers, and addresses of the Claims Administrator and Lead Counsel who will be available to answer questions concerning any matter contained in the Notice; and (v) the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).  The proposed Notice contains all of the information required by the PSLRA and "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 F. App'x. 37, 41 (2d Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 114 (2d Cir. 2005)).

Pursuant to the Court's Memo Endorsement entered October 1, 2018 (ECF No. 155), the proposed Notice has also been revised to disclose both Lead Plaintiff's and Defendants' positions on damages, assuming Lead Plaintiff were to prevail on liability.  It now states, in paragraph 2:

> Lead Plaintiff's consulting damages expert estimates that if Lead Plaintiff and the class were to prevail in establishing liability at trial, maximum aggregate damages (assuming Defendants were unable to prove that the Company's stock price drop was caused by other unrelated factors) would be approximately $95 million. However, Defendants' consulting damages expert estimates that if liability were established at trial, which Defendants deny, the most Lead Plaintiff and the class would be able to establish at trial would be aggregate damages of approximately 8% of Lead Plaintiff's estimate, or $7.6 million, after factoring in price decreases that they believe were unrelated to the alleged wrongdoing.

*See* Gardner Decl., Ex. 4.

Lead Plaintiff, through the Claims Administrator, will cause the Notice, which includes the proposed Plan of Allocation for the proceeds of the Settlement and Proof of Claim form, to be mailed by first class mail to every Settlement Class Member who can be identified through

reasonable effort, including through the use of record holder information supplied by Defendant CPI. The Summary Notice will be published in *The Wall Street Journal* and transmitted over *PR Newswire*, a national business-oriented wire service. Lead Counsel will also post copies of the Notice, as well as other important documents, on its firm website, www.labaton.com, and on the website developed for this Settlement. Further, Lead Plaintiff, through the assistance of the Claims Administrator, will give notice to nominee purchasers such as brokerage firms and other persons who purchased or acquired CPI common stock as record owners on behalf of beneficial owners. The form and manner of providing notice to the Settlement Class represent the best notice practicable under the circumstances and satisfy the requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x. 41, 44 (2d Cir. 2008) (notice satisfied due process where notice was "provided through individually mailed notice to all known and reasonably identified class members, publication in several newspapers, and entered on the district court's docket sheet"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 106, 114-16 (2d Cir. 2005) (affirming reasonableness of notice mailed to class members and published in widely-distributed publications).

Finally, Lead Plaintiff also requests that the Court appoint A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms, and to administer the Settlement. A.B. Data has extensive relevant experience and is a nationally recognized notice and claims administration firm. Its staff consists of experienced attorneys, CPAs, IT specialists and various other professionals with substantial experience in notice and claims administration. *See generally* Ex. 3.

For all the foregoing reasons, the notice program should be approved by the Court.

## V.  PROPOSED SCHEDULE OF SETTLEMENT RELATED EVENTS

The Parties respectfully submit the following general schedule for the Court's consideration (set out in more detail in the Notice Order).

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members [3] | 10 calendar days following the entry of the Notice Order ("Notice Date") |
| Deadline for publishing the Summary Notice[4] | Within 14 calendar days after the Notice Date |
| Deadline for filing papers in support of approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers in support of approval of Settlement, Plan of Allocation; and Lead Counsel's application for attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At the Court's convenience, approximately 90 calendar days after entry of the Notice Order. |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |

## CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court grant this motion in its entirety and enter the Notice Order submitted herewith.

---

[3]   *See* Exhibits 1 and 2 to the Notice Order.
[4]   *See* Exhibit 3 to the Notice Order.

Dated:   October 15, 2018                          Respectfully submitted,

                                                   **LABATON SUCHAROW LLP**

                                                   /s/ Jonathan Gardner
                                                   Jonathan Gardner
                                                   Michael P. Canty
                                                   Alfred L. Fatale
                                                   Ross M. Kamhi
                                                   140 Broadway
                                                   New York, New York 10005
                                                   Telephone: 212-907-0700
                                                   Facsimile: 212-818-0477
                                                   jgardner@labaton.com
                                                   mcanty@labaton.com
                                                   afatale@labaton.com
                                                   rkamhi@labaton.com

                                                   *Lead Counsel for Court-Appointed Lead*
                                                   *Plaintiff Alex Stewart and the Settlement*
                                                   *Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 15, 2018, I caused the foregoing Memorandum of Law in Support of Lead Plaintiff's Renewed Unopposed Motion for Authorization to Notify Settlement Class of Proposed Settlement and to Schedule a Settlement Hearing to be served electronically through the Court's ECF system upon all ECF participants.

*/s/* Jonathan Gardner
Jonathan Gardner